UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
WILMINGTON TRUST, NATIONAL   :
ASSOCIATION, AS TRUSTEE, *etc*.,   :   **MEMORANDUM DECISION AND**
  :   **ORDER**
  :
                 Plaintiff,   :   25-cv-6210 (BMC)
  :
       - against -   :
  :
  :
PACIFIC STREET PROPERTY GROUP   :
LLC, JOSHUA SOUFEH, *et al*.,   :
  :
  :
                Defendants.   :
--------------------------------------------------------- X

**COGAN**, District Judge.

       This is a diversity mortgage foreclosure action in which plaintiff Wilmington Trust,

National Association ("Wilmington"), has moved for the appointment of a receiver for the

subject property *pendente lite*. Defendant-mortgagor Pacific Street Property Group LLC

("Pacific") and its principal, defendant Joshua Soufeh, oppose the motion on the grounds that:

(1) appointing a receiver will cause harm, not prevent it; (2) default notices sent by Wilmington's

attorneys are insufficient under New York law; and (3) Wilmington lacks standing. None of

these defenses have merit and, accordingly, Wilmington's motion for the appointment of a

receiver is granted.

**BACKGROUND**

       The case arises from a $1,723,000 mortgage loan extended by Wilmington's predecessor-

in-interest, Sabal Capital II LLC, to Pacific for the investment property located at 1442 Pacific

Street in Brooklyn. The promissory note for the loan was secured by a mortgage duly filed in the

Office of the Registrar in Kings County. The mortgage documents contain the standard language

granting the mortgagee the right to the *ex parte* appointment of a receiver in the event of various defaults, including payment defaults:

> If an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property ... Borrower, by its execution of this Instrument, expressly consent to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.

It is undisputed that Pacific failed to make the payment due in January 2025 and has not made any payments through at least October 2025. Wilmington sent out notice of default and a demand to cure on August 18, 2025. With Pacific failing to cure, Wilmington accelerated the loan and commenced this foreclosure action. As of October 31, 2025, there is principal and accrued interest of $1,554,651.63 owing, in addition to various fees and charges provided by the terms of the mortgage.

## DISCUSSION

### I.    The Need for a Receiver

The reason why mortgage lenders insist upon the right to appoint receivers in their lending documents for income-producing property in the event of a payment default, and why courts routinely grant receivership motions *pendente lite*, is obvious. Once the property is underwater, the mortgagor-borrower may lose the incentive to maintain the property and remit proceeds for the benefit of the mortgagee; rather, the borrower has every incentive to retain rents and revenues for its own benefit for as long as possible until foreclosure occurs. Recognizing this economic reality, state courts grant receivership motions all the time, without any need for the mortgagee to show that there is a "need" for the receiver, see, e.g., Naar v. I.J. Litwak & Co., Inc., 260 A.D.2d 613, 614, 688 N.Y.S.2d 698 (2nd Dep't 1999), even on an *ex parte* basis. See, e.g., HSBC Bank USA, N.A. v. Rubin, 210 A.D.3d 73, 74, 176 N.Y.S.3d 649, 652 (2nd Dep't

2022) (citing N.Y. Real Prop. L. § 254 (10) and N.Y. Real Prop. Actions and Procs. L. § 1325(1)).

However, this case, even though based on diversity jurisdiction, is controlled by Federal Rule of Civil Procedure 66.[1]  The cases are practically uniform in holding that receivership is a procedural right and that federal law, not state law, determines whether a receiver should be appointed.  Magistrate Judge Marutollo recently set forth the law that governs this Court's determination:

> [R]eceivership is traditionally used to protect the value of an asset that is the subject of litigation. Appointment of a receiver in equity pursuant to Rule 66 in a diversity case is a remedy ancillary to the primary relief sought, the typical example of which is a plaintiff bringing a foreclosure action and requesting appointment of a temporary receiver pending foreclosure. Appointing a receiver constitutes an extraordinary remedy and ... should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property.
>
> In deciding whether in deciding whether appointment of a receiver is merited, Courts consider the following non-exclusive factors:
>
> > [1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, [5] plaintiff's probable success in the action and [6] the possibility of irreparable injury to his interests in the property.
>
> Courts may also consider whether the property is inadequate security for the outstanding debt and the financial status of the debtor, but these two factors alone are insufficient to show that the appointment of a receiver is appropriate.
>
> A court weighing an applicant's request for a receivership should also consider whether there exists a contractual provision authorizing the appointment of a

---

[1] My view is that the federal case law overstates the role of Rule 66 in diversity cases.  The rule does not address the standard for appointing a receiver.  It merely states that once appointed, receivers must follow the procedures in the other federal rules.  The appointment of a receiver is a provisional remedy, and Rule 64 expressly incorporates and defers to state law in determining the availability of provisional remedies unless expressly set forth in federal law. I will apply the multi-factor test that federal courts generally apply to receivership motions, but I am dubitante that a federal court should apply any different standard than would a state court.  Pacific goes so far as to analogize a Rule 66 receivership to a Rule 65 preliminary injunction but cites no cases in support thereof.

> receiver. Indeed, the existence of a provision authorizing the application for a
> receiver in the event of a default, strongly supports the appointment of a receiver'
> when there is a default. Where such a provision exists, and the mortgag[or] has
> consented to such appointment and repeatedly defaulted on conditions of the
> mortgage, the mortgag[or] bears the burden of demonstrating why a receiver
> should not be appointed. The existence of such a contractual provision, however,
> is not dispositive, and the appointment of a receiver is within a court's discretion.

Wells Fargo Bank National Association v. 366 Realty LLC, _ F. Supp. 3d _, 2025 WL 2923385,

at *9 (E.D.N.Y. Oct. 15, 2025) (citations and quotations omitted).

   At the outset, it seems clear that despite the extraordinary nature of the receivership

remedy, Pacific "bears the burden of demonstrating why a receiver should not be appointed,"

rather than Wilmington bearing the burden of showing that it should.  See Federal Nat'l Mortg.

Ass'n v. 204 Ellery St., LLC, No. 23-cv-5343, 2024 WL 2939179, at *3 (E.D.N.Y. Apr. 23,

2024) (quoting D.B. Zwirn Special Opportunities Fund v. Tama Broad., Inc., 550 F. Supp. 2d

481, 491 (S.D.N.Y. 2008), report and recommendation adopted, 2024 WL 3716031 (E.D.N.Y.

Aug. 8, 2024).  This is by virtue of the undisputed payment default and the clear provision in the

mortgage granting Wilmington the right to a receiver.  Although receivership may be an

"extraordinary" remedy in the context of wresting control of a business from its owner, there is

nothing extraordinary about appointing a receiver in a commercial mortgage foreclosure case

where the mortgagee can't keep up his mortgage payments.

   Indeed, I would go so far as to say that the case law seems to me to undervalue the

importance of a receivership provision in a mortgage.  I recognize that because receivership is an

equitable remedy that must be authorized by the court, the court retains discretion whether to

implement the parties' contractual agreement of what should happen when the mortgagor

defaults.  But where the parties have agreed in advance, the mortgagor has to make a strong

showing why the court should disregard the parties' agreement on a default remedy.  At the very

least, the recognition in the case law that the burden is on the mortgagor to show why a receiver should not be appointed seems apt.

In the instant case, Pacific has submitted an affidavit from its principal that contains mostly inadmissible argument and opinion evidence, but states the following factual averments:

> [T]he property … recently endured substantial fire damage during the Christmas holiday. I have provided pictures along with my insurance company contact information to our attorneys: With Granada Indemnity Company, at 370 West Park Avenue, Long Beach, New York, 11561 (516-329-9738(, [sic] this loss has been created under claim number 2801018 and is assigned to Bryan Fitzpatrick at bfitzpatrick@granadainsurance.com. Bryan has already assigned an independent adjuster (Long Island Adjustment Corp) to the inspection which I believe was already arranged. Michael Mataphati has been assigned as the adjuster . . . The repair process is well underway.

As Wilmington points out, this vague assertion raises more questions than it answers.  It doesn't address the cause of the fire or the extent of the damage, let alone whether the conditions that caused the fire have been addressed.  Moreover, if the fire occurred during the Christmas season, that means that Pacific was in default for a nearly a year before the fire occurred.  No amount of insurance proceeds to address the fire damage is going to remedy that.  In addition, it is concerning that the fire occurred after nearly a year of payment defaults.  Given its contractual right to a receiver, Wilmington does not need to show any basis for suspecting poor maintenance or worse as the cause of the fire; it can get a receiver in there before more damage occurs.

Nor has Pacific shown any economics of this building.  What is the income, notwithstanding the fire?  How many tenants remain?  How much rent are they paying? Are tenants in default?  Is Pacific making efforts to fill vacant apartments?  Is Pacific still paying itself or its affiliates a management fee or otherwise retaining whatever revenue there is that rightfully, under the loan agreement, now should be paid to Wilmington?

Wilmington, on the other hand, has submitted evidence showing that the property is, in fact, at substantial risk. It notes that, although the mortgage provides that in the event of default, Pacific is required to turn over rents to Wilmington, that has not occurred. Wilmington's valuation of the property is that it is worth "significantly less than the balance" owed on the loan, and Pacific does not dispute that. Perhaps most concerning, Wilmington asserts that Pacific has failed to pay waters bills and insurance premiums, which Pacific also does not dispute. This is a building with tenants that must be properly maintained.

Pacific has failed to make a showing that any of the factors that federal courts consider weigh in its favor, other than to speculate that it needs to be in possession to negotiate an insurance settlement and engage in some undefined restructuring of the property's debt. This Court concludes that the property is overleveraged, at risk, and that rents are not being used to protect the property or to benefit Wilmington's interest. Those facts, together with the contractual right to a receiver and the undisputed and seemingly uncurable payment default, are sufficient to warrant granting the motion.

## II.    Wilmington has Standing

The provenance of the note and mortgage at issue here is clear save for one technical quirk, upon which Pacific has seized. The documents annexed to the complaint show that the original mortgagee was an entity called Sabal Capital II, LLC. Through various assignments, the note found its way to Wilmington.

Pacific's opportunity arises from a feature in the display capacity of documents transmitted in the .pdf format. Under that format, one can display a column with "bookmarks" to the document. Creating bookmarks allows a reviewer to click on the particular bookmark and go right to the particular page, rather than scrolling through each page to find the particular page

sought.  The titles to the bookmarks are usually page numbers by default or are inserted by the reviewer.

Pacific is relying on the title of two bookmarks, which are sub-bookmarks of another bookmark titled "01-05."  The pages to which the bookmarks refer is entitled "ALLONGE TO NOTE."  It recites the loan from Sabal Capital II, LLC to Pacific and then shows the assignment from Sabal Capital II, LLC to Wilmington.  Significantly, however, at least for Pacific's argument, the sub-bookmarks are titled:

**Exhibit C – Note**
**(NEEDS ALLONGE)…**

**Pacific – Allonge**
**(Correct)**

According to Pacific, the phrase "NEEDS ALLONGE" is "a tacit admission by the plaintiff that the Note was not properly endorsed at the time of filing" and thus, ostensibly, a tacit admission by Wilmington that it has no standing.

No, it is not.  "New York courts have repeatedly held that proof of physical possession – such as the affidavits of [a party's] corporate representative and counsel [–] is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note."). OneWest Bank, N.A. v. Melina, 827 F.3d 214, 223 (2d Cir. 2016); see also CIT Bank, N.A. v. Howard, No. 14-cv-7470, 2018 WL 3014815, at *7 (E.D.N.Y. June 15, 2018) ("Plaintiff [had] standing to foreclose [even if] various indorsements and allonges . . . were less clear (or absent entirely)" because of the "unrebutted affidavit testimony").

The bookmark is not part of the allonge.  It is simply a note from someone who was putting together the documents that the person needed to complete the package.  Nothing Pacific points to is an admission to any break in the assignment process of the loan to Wilmington.  Nor

does Pacific do anything to rebut the affidavit testimony by Wilmington's real estate analyst that it "is the owner and holder of" the note at issue.  Accordingly, Wilmington has standing.

## III.    Notice of Default and Acceleration was Unnecessary but Nonetheless Proper

Relying on Siegel v. Kentucky Fried Chicken of Long Island, Inc., 67 N.Y.2d 792, 793, 501 N.Y.S.2d 317, 318 (1986), Pacific argues that the notice of default that Wilmington sent was legally insufficient because it was signed and sent only by Wilmington's attorneys, not Wilmington itself.  However, all Siegel holds is that the form of default notices must conform to the parties' contract.  The lease at issue in Siegel required that the notice come from the "landlord," which was defined as "only the owner, or mortgagee in possession … ." Id. at 794, 501 N.Y.S.2d at 318.

The mortgage agreement here has nothing in common with Siegel.  First, it expressly waives notice of default and acceleration.  Second, the New York courts have severely limited Siegel to those situations where the language of the document expressly permits only the owner to send notice.  See Equator Int'l, Inc. v. NH St. Invs., Inc., 43 Misc. 2d 251, 262, 978 N.Y.S.2d 817, 826 (N.Y. Cnty. Sup. Ct. 2014) (lease was "distinguishable from the language of the notice provision in Siegel, in that Section 2.02 does not require notice to be given by a specific person or entity."); cf. Kwong v. Eng, 183 A.D.2d 558, 583 N.Y.S.2d 457 (1st Dep't 1992) (Sullivan, J., concurring) ("the Court of Appeals' affirmance in Siegel was on such narrow grounds – a contract interpretation based on the factual peculiarities of the particular lease – as to place in doubt the vitality of the broad so-called Siegel rule[.]").  Finally, even if the notice was inadequate, it is clear under New York law that the commencement of a foreclosure action is sufficient to accelerate the debt.  See CIT Bank, N.A. v. Zisman, No. 17-cv-02126, 2020 WL 8081939, at *4 (E.D.N.Y. Apr. 8, 2020).

## CONCLUSION

Wilmington's motion for a receiver is granted.  The receiver will be appointed by

separate order.

**SO ORDERED.**

*Brian M. Cogan*
_____
                    U.S.D.J.

Dated: Brooklyn, New York
       January 19, 2026